**ADAMS OUTDOOR ADVERTISING, INC., Plaintiff,**

v.

**CITY OF HOLLAND, Defendant.**

No. 1:94–CV–542.

United States District Court,
W.D. Michigan,
Southern Division.

April 21, 1995.

James J. Walsh, Bodman, Longley & Dahling, Detroit, MI, for plaintiff.

Ronald J. Vander Veen, Cunningham Dalman, P.C., Holland, MI, for defendant.

### OPINION

McKEAGUE, District Judge.

This case presents a challenge to defendant's city-wide prohibition against new off-site billboards.  Plaintiff's complaint alleges violations of the Michigan Home Rule City Act ("HRCA"), M.C.L. 117.1 *et seq.*, and the relevant provision of the Zoning Enabling Act ("ZEA"), M.C.L. 125.581 *et seq.*  The complaint also states a claim under 42 U.S.C. § 1983 alleging a violation of plaintiff's rights under the First Amendment of the United States Constitution.  Now before the Court

are the parties' cross-motions for summary judgment.

## I

The ordinance under challenge in this case was enacted by the City of Holland, Michigan (hereinafter the "city" or "defendant") in December 1993, as an amendment to the city ordinance code. The specific challenge is to the provisions dealing with billboards.

The ordinance defines "billboard or advertising sign" as "a sign which contains a message or advertises an establishment, product, service, space or activity not available on the lot on which the sign is located." Section 39–153. The ordinance provides that "billboards and advertising signs are not permitted," § 39–155(g), and further provides that "nonconforming signs, billboards or advertising signs may not be expanded, enlarged, or extended; however, said signs may be maintained and repaired so as to continue the useful life of the sign." Section 30–157(b).

Plaintiff claims that defendant's ordinance "completely bans billboards," thereby "exceed[ing] its authority under the Home Rule Cities Act" and violating § 12 of the ZEA, M.C.L. 125.592.

The Court has considered the parties' briefs in support of and in opposition to their cross-motions for summary judgment and the arguments set forth at the hearing, and now considers this matter ready for decision.

## II

In *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court explicated the historical underpinnings of "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion,' restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary." *Id.* at 501, 61 S.Ct. at 645.

"Under the *Pullman* doctrine, where a state law is being challenged in federal court as contrary to the federal Constitution and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state courts to decide the state issues." *Martin–Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 563 (6th Cir.1982). "Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

> In some cases, however, the state question itself need not be determinative of state policy. It is enough that exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Id.* The state courts are "[p]lainly ... the more appropriate forum" for resolution of purely state law issues. *City of Chicago v. Fieldcrest Dairies, Inc.*, 316 U.S. 168, 172, 62 S.Ct. 986, 988, 86 L.Ed. 1355 (1942).

## III

The Michigan caselaw cited by the parties in support of their respective positions leads the Court to conclude that state law is not definitively settled in this particular area, especially under the specific circumstances presented here.

■ Section 39–157(b), which allows existing billboards to be maintained and repaired, clearly belies plaintiff's broad assertion that the ordinance "completely bans billboards." At the hearing, plaintiff made clear that this argument is based on what it describes as a natural loss of billboard sites over time.[1] Plaintiff relies primarily on *Central Adv. Co. v. City of Ann Arbor*, 391 Mich. 533, 218 N.W.2d 27 (1974), and its progeny.[2] Plaintiff

---

1. Plaintiff describes several possible reasons for this phenomenon. Plaintiff's brief in support, p. 6.

2. The subsequent cases relied on by plaintiff are interpretations of the *Ann Arbor* decision by the Michigan Court of Appeals which, in this Court's opinion, do not add any additional support to

claims that "[t]he ordinance invalidated in the *Ann Arbor* case not only prohibited the construction of new billboards but sought to eliminate over time, through so-called 'amortization' the sixty billboards Central Advertising owned in Ann Arbor. Subsequent cases make clear, however, that the objectionable aspect of Ann Arbor's ordinance was its total ban on new billboard construction." Plaintiff's brief in support, p. 2 and n. 2.

Plaintiff's rendition of the factual basis of the *Ann Arbor* opinion is wholly unfounded. Plaintiff relies on speculations in the dissenting opinion as to the objectionable provisions of the Ann Arbor ordinance.[3] The majority opinion did uphold the trial court's finding "that the interplay of diverse restrictions in the Ann Arbor Sign Ordinance effectively outlaws billboards," but emphasized that the "trial judge's opinion does not contain particularized findings of fact." *Ann Arbor*, 391 Mich. at 536, 218 N.W.2d 27. The majority characterized as "conclusory" the trial court's conclusion that the Ann Arbor ordinance was "too general, too broad." *Id.* at 537, 218 N.W.2d 27. "We are left to speculate what specific provisions of the sign ordinance— what sign restrictions—are 'too general, too broad.'" *Id.* Properly relying solely on the majority opinion in the *Ann Arbor* case, this Court cannot confidently predict how the competing state law interests in this case would be resolved by the Michigan Supreme Court.

Plaintiff argues that defendant's "city-wide exclusion [of billboards] implicates M.C.L. 125.592." In support of its argument, plaintiff cites *Eveline Twp. v. H. & D. Trucking Co.*, 181 Mich.App. 25, 448 N.W.2d 727 (1989). In that case the Michigan Court of Appeals construed M.C.L. 125.297a, a provision identical to M.C.L. 125.592 except that it applies to townships rather than cities. The Court of Appeals, relying on the statutory language and *Kropf v. Sterling Heights*, 391

Mich. 139, 155–56, 215 N.W.2d 179 (1974), stated that, under this provision, "a zoning ordinance may not totally exclude a land use where (1) there is a demonstrated need for that land use in the township or surrounding area, (2) the use is appropriate for the location, and (3) the use is lawful." *Eveline Twp.*, 181 Mich.App. at 32, 448 N.W.2d 727.

Again construing M.C.L. 125.297a, in *English v. Augusta Twp.*, 204 Mich.App. 33, 514 N.W.2d 172 (1994), the Michigan Court of Appeals added another consideration to the three-pronged standard set forth in the *Eveline Twp.* case: "An ordinance that has the effect of totally prohibiting a particular land use within a township is impermissible in the absence of special circumstances." *Augusta Twp.*, 204 Mich.App. at 37, 514 N.W.2d 172.

None of these cases definitively establish, or even allow this Court confidently to predict, how the Michigan Supreme Court would apply these principles in the instant case. The parties have not cited, nor has this Court discovered, any case dealing with an ordinance that bans new billboards and allows old ones to remain and be repaired and otherwise maintained. Given that significant difference, this Court's prediction of how the Michigan Supreme Court would apply the "appropriate use" and "special circumstances" factors in this case would not demonstrate a "scrupulous regard for the rightful independence of the state [judiciary]."

Plaintiff also cites the *Ann Arbor* case for the proposition that the HRCA, specifically § 4i(5), M.C.L. 117.4i(5), does not authorize the total elimination of billboards. However, plaintiff does not establish definitively that defendant's ordinance actually constitutes a total elimination of billboards. More importantly, the Court notes the Michigan Supreme Court's holding in *Adams Outdoor Advertising v. East Lansing*, 439 Mich. 209,

plaintiff's reliance on the *Ann Arbor* opinion itself. Further, it is well-established that decisions of intermediate state appellate courts are not binding on federal courts' construction of state law. See *Mahne v. Ford Motor Co.*, 900 F.2d 83, 86 (6th Cir.), *cert. denied* 498 U.S. 941, 111 S.Ct. 349, 112 L.Ed.2d 313 (1990).

**3.** The majority in *Ann Arbor* noted that the dissenting opinion contains examples of allegedly "unreasonable" provisions of the ordinance challenged in that case. However, the majority emphasized that "[t]hese examples are not derived from findings of the trial judge—there are, to repeat, no specific findings." *Ann Arbor*, 391 Mich. at 537–38, 218 N.W.2d 27.

483 N.W.2d 38 (1992), that "while the power to amortize nonconforming[4] signs is not expressly delegated in the HRCA, it can be inferred from the broad language of M.C.L. 117.4i(5)...." *East Lansing,* 439 Mich. at 218–19, 483 N.W.2d 38.

██ In light of the apparent lack of clearly established principles in the state statutory and decisional law relevant to the instant case, and the clash of significant interests on both sides of this dispute, the Court concludes that this is a case where federal judicial review at this stage of the proceeding "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River,* 424 U.S. at 814, 96 S.Ct. at 1245. Proper regard for the principles of federalism mandates that this Court allow the state courts to determine the appropriate balance of state law interests. If the state courts decide that defendant's ordinance runs afoul of state law, then an unnecessary decision on a federal constitutional issue will have been avoided. And if the state courts determine that defendant's ordinance comports with Michigan law, then plaintiff's First Amendment claim can be addressed by the state courts,[5] with ultimate review by the United States Supreme Court. This Court hastens to add, however, that plaintiff is not required to have its First Amendment claim litigated in the state court. "[A] party has the right to return to the District Court, after obtaining the authoritative state court construction for which the court abstained, for a final determination of his [federal] claim." *NAACP v. Button,* 371 U.S. 415, 427, 83 S.Ct. 328, 335, 9 L.Ed.2d 405 (1963). The party must inform the state court "what his federal claims are, so that the state statute[s] may be construed 'in light of' those claims," *England v. Louisiana State Bd. of Medical Examiners,* 375 U.S.

411, 420, 84 S.Ct. 461, 467, 11 L.Ed.2d 440 (1964), but needs only to put in the record in the state court his opposition to the disposition of the entire case to preserve his right to return to the federal district court. *Id.* at 421, 84 S.Ct. at 467–68. And "an explicit reservation is not indispensable; the litigant is in no event to be denied his right to return to the District Court unless it clearly appears that he voluntarily ... fully litigated his federal claims in the state courts." *Id.* (footnote omitted). See *Wicker v. Bd. of Educ. of Knott County, Kentucky,* 826 F.2d 442, 445 (6th Cir.1987).

Therefore, the Court abstains from exercising its supplemental jurisdiction over the state law issues presented in this case because the relevant state law is uncertain and state court clarification might avoid a federal constitutional ruling. This proceeding is dismissed without prejudice to the plaintiff's right to return to this Court for adjudication of its First Amendment claim should that prove necessary after resolution of the fundamental state law issues by the state courts.

An order consistent with this opinion shall issue forthwith.

### ORDER

In accordance with the opinion of the Court of even date,

**IT IS HEREBY ORDERED** that defendant's motion for summary judgment (docket # 7) and plaintiff's cross-motion for summary judgment (docket # 9) are **DISMISSED without prejudice** pursuant to this Court's decision to abstain under *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

**IT IS FURTHER ORDERED** that any statute of limitations that was tolled by the

---

4. The height, size, and placement requirements at issue in the *East Lansing* case are not analogous to the ordinance challenged in this case.

5. In fact, state courts are obligated to decide issues of federal law not expressly excluded from their general jurisdiction by Congress. See *General Oil Co. v. Crain,* 209 U.S. 211, 227–28, 28 S.Ct. 475, 480–81, 52 L.Ed. 754 (1908). The obligation of state courts to enforce federal law

exists even in cases where the federal law conflicts with state policy. *Employees of the Dept. of Public Health & Welfare v. Dept. of Public Health & Welfare,* 411 U.S. 279, 298, 93 S.Ct. 1614, 1625, 36 L.Ed.2d 251 (1973); *Testa v. Katt,* 330 U.S. 386, 392–94, 67 S.Ct. 810, 813–15, 91 L.Ed. 967 (1947). This obligation arises from the supremacy clause of the United States Constitution, Art. VI, § 2.

initiation of this action shall remain tolled during the time that the action is dismissed.

**IT IS FURTHER ORDERED** that this dismissal shall not prejudice the procedural or substantive rights of any party, as the dismissal is done for docket management purposes only.

**IT IS FURTHER ORDERED** that plaintiff may reinstate this case to the Court's active docket by filing a notice of reinstatement and serving it upon defendant.